### HEYNSOHN *v.* MERRIMAN and others.

*(District Court, S. D. New York.* April 7, 1880.·

WAGES—DISABLED SEAMAN LEFT BY MASTER IN FOREIGN PORT.—A seaman, though sick, who is left by the master in a foreign port, without his consent and without being discharged, is entitled to his wages up to the end of the voyage, or until he can get back to his home port.

SAME—REV. ST. § 4582—PAYMENT TO CONSUL IN FOREIGN PORT.—Section 4582 of the Revised Statutes, has no application to a seaman discharged in a foreign port without his consent; and enforced payment of wages to a foreign consul, under the provisions of that statute, will not affect the rights of the libellant.

In Admiralty.

*Alexander & Ash,* for libellant.

*Andrews & Smith,* for defendants.

CHOATE, J. This is a suit for wages. The libellant shipped, as able seaman, on the bark John Zittlosen, of which defendant was master, at New York, January 3, 1875, on a voyage to Queenstown, and thence to certain other ports, and back to a port of discharge in the United States—the voyage not to exceed 14 months, at $20 a month wages.

About June 5, 1875, the bark arrived at Buenos Ayres, with the libellant sick on board, and he was placed in a hospital there soon after the ship's arrival, and remained in the hospital 16 days, when the master again took him on board, and he continued to work on board for about 35 days, when, being again sick and unable to work, he requested the master to send him to the hospital again. The master put him

ashore, and the bark sailed from that port, leaving him sick on shore. He was not discharged, nor paid his wages.

The bark went from Buenos Ayres to Valparaiso, and the United States consul there, being informed that the libellant had been left sick at Buenos Ayres, without being discharged, and without payment of his wages, refused to clear the vessel until the sum of $85.97 was paid to him, that amount being claimed by the consul as the wages actually due to libellant, and three months' extra wages.

The master paid this sum to the consul, who credited it to the sailors' relief fund of the Valparaiso consulate, but no part of the money was paid to the libellant. The libellant remained in the hospital till November 24, 1875, when he was discharged therefrom as cured.

On the fifteenth of February, 1876, he shipped on another vessel for the United States. This was the first berth he was able to obtain in order to get home after leaving the hospital.

The libellant claims his wages up to January 15, 1876. The defendant claims that the payment at Valparaiso discharges him from all liability, or, if not, that he should be credited with that payment.

The libellant is clearly entitled to his wages for the time claimed. A seaman, though sick, who is left by the master in a foreign port, without his consent and without being discharged, is entitled to his wages up to the end of the voyage, or until he can get back to his home port. *Nevitt* v. *Clarke,* Olc. Adm. 320.

The defendant claims that the payment at Valparaiso works a satisfaction of the libellant's claim for wages, under Rev. St. § 4582. But I do not perceive that that section has any bearing on the case. By it a master is required, on discharging a seaman, who is a citizen of the United States, with his own consent, in a foreign country, to produce to the consul the certified list of his ship's company, and to pay to the consul the wages due, and three months' extra wages. That is, if the defendant had, with the consent of the libellant, discharged him at Buenos Ayres, he must have paid to the consul there the wages due up to that time, and three months'

extra wages, and this would have released him and the vessel from further liability under the contract.

Of the extra wages so paid two-thirds would have gone by the statute to the seaman himself, and one-third to a fund for the relief of destitute seamen. But there is no pretence that the libellant was discharged with his own consent, and therefore the statute can have no possible application to effect the release of the vessel or the master. Nor can the libellant's rights be in any way affected by the act of the consul at Valparaiso, which appears to have been unauthorized, in exacting this payment from the master.

Decree for libellant, with costs.